IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20 CV 11 MR WCM

| | |
|---|---|
| STEPHEN DOUGLAS PARKER, ) ) Plaintiff, ) ) v. ) ) CASE FARMS, LLC and GUY ) PERKINS ) Defendants. ) _____ ) | MEMORANDUM AND RECOMMENDATION |

This matter is before the Court on Defendants' Motion to Dismiss Count Two (Fraud) of the Complaint (Doc. 13) which has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). Plaintiff has responded (Doc. 18) and Defendants have replied (Doc. 19).

## I. Relevant Background[1]

Case is a large poultry dealer and North Carolina limited liability company, with its principal place of business in Troutman, North Carolina.

---

[1] Various materials are attached to Plaintiff's Complaint, including copies of agreements with Defendant Case Farms, LLC ("Case") from 2012 and 2016. Docs. 1-2 & 1-6. These documents may be considered in addition to Plaintiff's Complaint (Doc. 1). See Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)(stating that the court may consider matters of public record, documents attached to the complaint, and documents attached to the motion to dismiss so long as they are integral to the complaint and authentic).

1

Defendant Guy Perkins is an employee of Case. Pl.'s Compl. (Doc. 1) at ¶¶ 2,3, & 7.

In 2005, when Plaintiff's father passed away, Plaintiff acquired a Burke County farm that had been in his family since 1941. Id. at ¶ 31.

At some unspecified time after the acquisition, Plaintiff began "preliminary discussions" with Case regarding building chicken houses on the property. Id.

During these discussions, Case provided Plaintiff with "detailed financial projections" which Plaintiff provided to his bank in connection with $1 million dollars in loans he obtained initially to build and equip his chicken farm. Id. at ¶ 32. The debt was secured by the title to the farm. Id. Plaintiff alleges that "experience has shown that these projections… were wildly incorrect." Id.

In 2012, Plaintiff signed his first contracts with Case. Attached as Exhibit 2 to the Complaint is a Broiler Production Agreement, a Contract Payment Schedule, and a New Case Farms Broiler House Supplement Agreement (collectively the "2012 Contracts"). Doc. 1-2.

Plaintiff alleges that "Case employees" told him he had to sign the 2012 Contracts without modification, did not allow him to consult with an attorney before he signed, and did not provide him with a copy of the documents at the time he signed them. Id. Case also provided Plaintiff with the business cards

2

for the only contractors he was allowed to use for the construction of chicken houses. Id. at ¶ 35.

Plaintiff then constructed four chicken houses on his farm. Id. at ¶ 38.

Plaintiff also alleges that in 2012, when he asked "Case managers about the term of his contract," they told him the average age of other chicken farmers in the area was 88 and stated "son, you can continue to grow chickens for us until you retire." Id. at ¶ 36. At another point in the Complaint, Plaintiff alleges that Case "represented to Plaintiff that as long as he grew good birds, he would continue to receive placements of baby chicks from Case." Id. at ¶ 84.

In 2016, Case convinced Plaintiff it was necessary for him to expand his operation "in order for his farm to 'cash flow'" and Plaintiff constructed another four chicken houses on his farm. To finance that construction, Plaintiff borrowed another $1.2 million from his bank, with the debt also being secured by title to the farm. Id. at ¶ 38.

In 2016, and with the construction of the new chicken houses, Case "made [Plaintiff] sign a new Broiler Agreement." A Broiler Production Agreement, a Contract Payment Schedule, and a New Case Farms Broiler House Supplement Agreement (collectively the "2016 Contracts") are attached as Exhibit 6 to Plaintiff's Complaint. Id. at ¶ 40; Doc. 1-6. [2]

---

[2] Portions of the 2016 Contracts attached to the Complaint appear to be incomplete.

3

Plaintiff alleges that "Case's employee" advised Plaintiff that he had to execute the 2016 Contracts immediately and that they were identical to the 2012 Contracts, though in fact the new agreements included an arbitration clause that was not present in the 2012 Contracts. Similarly, Plaintiff was not given time to read the 2016 Contracts before he signed them or an opportunity to consult with legal counsel and was not provided with a copy of the 2016 Contracts. Id. at ¶ 40.

Plaintiff alleges that Case's representation that he would continue to receive chickens "was the primary inducement for him to enter into the agreement with Case as well as to expend funds to improve his chicken houses." Plaintiff further alleges that Case knew that its representations "were false and misleading" and "intended to induce Plaintiff to build his facilities … at his expense." Id. at ¶¶ 45-46.

Plaintiff also alleges that throughout the course of their dealings, Case knowingly and willfully provided feed containing mold, diseased chicks, failed to provide medication for the chicks, and added thousands of chickens to Plaintiff's houses which were not included in initial delivery receipts, all of which resulted in financial losses to Plaintiff. Id. at ¶¶ 59-62.

On January 2, 2020, Plaintiff received a termination letter from Case informing him that Case would not be placing chicks on his farm in January 2020. Id. at ¶ 66.

After receiving this letter, Plaintiff was informed by his bank that "if he d[id] not have a chicken contract, he w[ould] need to place his family farm up for sale as security for his loans." Id. at ¶ 72.

Plaintiff alleges that he has incurred substantial damages as a result of the alleged fraudulent conduct by Case, including lost business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, and mental and emotional anguish. Id. at ¶ 89.

## II. Legal Standards

### A. Rule 12(b)(6)

When considering a motion made pursuant to Rule 12(b)(6), the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009).

The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192. That is, while "detailed factual allegations" are not required, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when

5

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); accord Consumeraffairs.com, 591 F.3d at 255. In short, the well-pled factual allegations must move a plaintiff's claim from conceivable to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

### B. Rule 9

Allegations sounding in fraud must also satisfy the heightened pleading standards of Rule 9. Cozzarelli v. Inspire Pharmaceuticals Inc., 549 F.3d 618, 629 (4th Cir. 2008); Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007). Specifically, Rule 9(b) provides that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "The 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999)(citing 5 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure: Civil § 1297, at 590 (2d ed. 1990)).

A claim is subject to dismissal under Rule 12(b)(6) if it does not comply with Rule 9(b). Id. at 783 n.5 ("lack of compliance with Rule 9(b)'s pleading

6

Case 1:20-cv-00011-MR-WCM Document 27 Filed 07/29/20 Page 6 of 16

requirements is treated as a failure to state a claim under Rule 12(b)(6).") (citing United States ex rel. Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 901 (5th Cir.1997)).

## III. Discussion

Plaintiff's Complaint includes seven (7) claims for relief. Defendants' Motion seeks the dismissal of only one—Plaintiff's claim for fraud, which appears as Count Two of the Complaint. That claim reads as follows:

> 83. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.
>
> 84. Case in 2012 and many times since represented to Plaintiff that as long as he grew good birds, he would continue to receive placements of baby chicks from Case.
>
> 85. Case's representation that he would continue to receive chickens was the primary inducement for Plaintiff to enter into the agreement with Case as well as expend funds to improve his chicken houses. A well-constructed poultry facility has a life span of approximately 30 years and Plaintiff needed at least fifteen (15) years just to pay off the indebtedness.
>
> 86. Case knew that their representations to Plaintiff that he would continue to receive chickens as long as he grew good birds were false and were intended to induce Plaintiff to improve his facilities at his expense and to continue to contract with Case.
>
> 87. Plaintiff reasonably relied on the past statements of Case and did not know that the representations were false until receiving Case's December 16, 2019 termination letter on January 2, 2020, that chicks would not be arriving as contractually scheduled.

7

> 88. Plaintiff reasonably relied on the Case's representations concerning the longevity of the relationship and the promises from Case personnel that they would be placing chicks on his farm to his detriment and did not know that the representations were false until Case informed him that they would not be placing chicks on his farm and subsequently failed to provide chicks in January of 2020. To date Case continues to refuse to supply chicks to Plaintiff's farm.
>
> 89. As a direct and proximate result of Case's intentional and willful fraud, Plaintiff suffered and incurred substantial damages . . . .
>
> Pl.'s Compl. (Doc. 1) at ¶¶ 83-89.

A threshold issue is identifying the representations upon which Plaintiff relies for this claim. The Complaint contains references to multiple alleged representations and conduct by Case's representatives. For example, Plaintiff alleges that Case knowingly made "materially false representations about future income, costs, expenses, company policies and working relationships to Plaintiff, or concealed related material facts and information," that Plaintiff suffered financial losses as a result of Case's payment structure and the unreliable financial projections that Case provided him, and that Case knowingly delivered Plaintiff diseased chicks and provided inadequate medical treatment. Id. at ¶¶ 20, 24, 33, 46, 49-50, 60-62.

However, in describing his claim for fraud, Plaintiff focuses on alleged representations regarding the length of his future business relationship with

Case, including Case's alleged representations that "as long as he grew good birds, he would continue to receive placements of baby chicks from Case." Id. at ¶ 85.

As for the timing of these alleged representations, Plaintiff seems to indicate that Case made them both prior to the entry of the 2012 Contracts and subsequent to the execution of those documents, such that Case fraudulently induced him to enter the 2012 Contracts and the 2016 Contracts. See Doc. 1 at ¶ 85 ("Case's representation that he would continue to receive chickens was *the primary inducement for Plaintiff to enter into the agreement with Case as well as expend funds to improve his chicken houses.*")(emphasis added) and ¶ 86 ("Case knew that their representations to Plaintiff that he would continue to receive chickens as long as he grew good birds were false and were intended *to induce Plaintiff to improve his facilities at his expense and to continue to contract with Case.*")(emphasis added).

"In order to assert either a claim of general fraud or a fraud in the inducement in North Carolina, a plaintiff must allege facts supporting each element of a fraud claim, including: (1) the false representation or concealment of a material fact; (2) that is reasonably calculated to deceive; (3) made with the intent [to] deceive plaintiff; (4) that does in fact deceive plaintiff; and (5) results in damage to plaintiff." Mountain Land Properties, Inc. v. Lovell, 46 F. Supp. 3d 609, 626–27 (W.D.N.C. 2014)(citing cases). "[A]ny reliance on the

9

allegedly false representations must be reasonable." <u>Jackson v. Minnesota Life Ins. Co.</u>, 275 F. Supp. 3d 712, 730 (E.D.N.C. 2017)(quoting <u>Forbis v. Neal</u>, 361 N.C. 519, 527, 649 S.E.2d 382, 387 (2007)).

"In addition to alleging factual allegations supporting each element of a fraud claim, a party must also plead the circumstances of fraud with particularity." <u>Mountain Land Properties</u>, 46 F. Supp. 3d at 626–27 (citing Fed.R.Civ.P. 9(b)).

Defendants argue that the Complaint fails to satisfy the first element because Plaintiff's allegations concern "forward looking representations about the longevity of the contractual relationship" that are not actionable, Defs.' Mem. (Doc. 14), p. 1, and because the Complaint does not allege "the circumstances of the false representation with the particularity" required by Rule 9(b). Defs.' Reply (Doc. 19), p. 4. Defendants also argue that it was unreasonable for Plaintiff to rely on any "alleged forward-looking statements" regarding the length of his contract with Case. Doc. 14, p. 3.

### A. False Representations of a Material Fact

Under North Carolina law, "[t]he general rule is that an unfulfilled promise cannot be the basis for an action for fraud unless the promise is made with no intention to carry it out." <u>Hills Mach. Co., LLC v. Pea Creek Mine, LLC</u>, 828 S.E.2d 709, 717 (N.C. Ct. App. 2019) (quoting <u>Northwestern Bank v. Rash</u>, 74 N.C. App. 101, 105, 327 S.E.2d 302, 305 (1985)). In other words,

10

"[w]here it appears that a promisor makes a representation of future intent and, at the time of making the representation, has no intention of complying therewith, the state of mind of the promisor is a subsisting fact such as will support an action in fraud." Forstmann v. Culp, 648 F. Supp. 1379, 1386–87 (M.D.N.C. 1986)(citing Kent v. Humphries, 50 N.C. App. 580, 275 S.E.2d 176, modified on other grounds, 303 N.C. 675, 281 S.E.2d 43 (1981)); see also Higgins v. Synergy Coverage Sols., LLC, No. 18 CVS 12548, 2020 WL 256486, at *11 (N.C. Super. Jan. 15, 2020)(citing Overstreet v. Brookland, Inc., 52 N.C. App. 444, 452, 279 S.E.2d 1, 6 (1981))("an intentional 'misrepresentation of the state of the promisor's mind' constitutes a misrepresentation of existing fact").

Here, Plaintiff alleges that Case promised to continue doing business with him "as long as he grew good birds" and/or until he retired but, subsequently, broke that promise by refusing to provide Plaintiff with chicks beginning in January 2020.

These allegations, however, are insufficient to establish a claim for fraud. First, assuming that the statements attributed to Case can be considered "unfulfilled promises," the Complaint does not provide sufficient factual allegations to support an inference that the Case representative(s) making those statements had no intention for Case to comply with those promises at the time they were made. While the Complaint does state that "Case knew that their representations to Plaintiff that he would continue to

11

receive chickens as long as he grew good birds were false … ," see Pl.'s Compl. (Doc. 1) at ¶ 86, this allegation falls in the category of "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement" that are not required to be accepted as true for the purpose of a motion to dismiss. Consumeraffairs.com, 591 F.3d at 255.

In addition, the allegations of the Complaint do not state with particularity the circumstances surrounding the alleged misrepresentations, as required by Rule 9. Plaintiff alleges that "Case managers" and "Case" made certain representations to him, see e.g., Pl.'s Compl. (Doc. 1) at ¶ 36 ("When Plaintiff asked *Case managers* about the term of his contract, they told him …)(emphasis added) and ¶ 84 ("*Case* in 2012 and many times since represented to Plaintiff that as long as he grew good birds, he would continue to receive placements of baby chicks …")(emphasis added), but does not identify the speakers or provide the time (other than referring generally to 2012) or the place when the representations were made. See Foster v. Wells Fargo, NA, 232 N.C. App. 690, 758 S.E.2d 185 (2014)(affirming dismissal of plaintiffs' fraud claims because "the complaint fails to specifically identify any individual acting on behalf of Wells Fargo (or any other defendant) who allegedly made the [mis]representations.")(citing Coley v. N.C. Nat. Bank, 41 N.C.App. 121, 125, 254 S.E.2d 217, 220 (1979) ("It is not sufficient to conclusorily allege that a corporation made fraudulent misrepresentations; the

12

pleader in such a situation must allege specifically the individuals who made the misrepresentations of material fact, the time the alleged misstatements were made, and the place or occasion at which they were made.")).

Accordingly, the undersigned will recommend dismissal of Plaintiff's fraud claim on this basis.

### B. Reasonable Reliance

Defendants also argue that Plaintiff's reliance on the alleged representations regarding the length of his relationship with Case was unreasonable because these representations were in conflict with the terms of the 2012 Contracts and the 2016 Contracts.

The undersigned, however, is not persuaded by this argument. The 2012 Contracts are made up of multiple agreements. One of those documents—the Broiler Production Agreement—contains the following provisions:

> G. For the convenience of not having to initiate a new Agreement after each flock, this Agreement shall be continuous until the Agreement is terminated by Case Farms, L.L.C. or the Producer.
>
> H. This agreement may be terminated by either party by written notice to the other in the event of any default by the other party. Any such termination shall not relieve the defaulting party of any liability to the other as a result of any default hereunder occurring prior to termination. Either party may terminate this agreement at any time for any reason provided that written notice be given to the other party no later than 10 days after the movement of a flock and prior to the placement of the next block; provided however, that if

13

> Case Farms LLC has executed a New House Producer Agreement with Producer, it may not terminate this agreement unless Producer defaults in his/her obligations under this Agreement.

Broiler Production Agreement, § V (Doc. 1-2), p. 4.

The 2016 Contracts include similar provisions. Doc. 1-6, p. 5.[3]

These provisions are not entirely inconsistent with the alleged representations by Case that it would conduct business with Plaintiff indefinitely. That is, though the contracts do include termination provisions, the contracts do not appear to be made for a specific term and instead are designed to continue unless or until they are terminated.

Further, the Complaint includes factual allegations regarding the parties' interactions at the time the agreements were executed, including that Plaintiff was pressured to sign quickly and without the opportunity to consult with counsel.

"The reasonableness of a party's reliance is a question for the jury, unless the facts are so clear that they support only one conclusion." Forbis, 361 N.C. at 527(citing Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP, 350 N.C. 214, 225, 513 S.E.2d 320, 327 (1999) and Johnson, 263 N.C. at 758)).

---

[3] Plaintiff has alleged that the 2012 Contracts were "for a twelve (12) year term, renewing automatically." Doc. 1 at ¶ 34. However, the reference to 12 years appears to relate to the New Case Farms Broiler House Supplement Agreement, which describes certain ways in which Case will supplement the Producer over a period of 12 years. Doc. 1-2, pp. 9-10.

14

Under the circumstances presented here, the alleged facts are not so clear that they support only one conclusion and therefore the undersigned will not recommend dismissal of Plaintiff's fraud claim as a matter of law on this alternative basis at this stage of the proceedings.

## IV. Recommendation

Having carefully considered the parties' arguments, the record, and applicable authority, the undersigned respectfully **RECOMMENDS** that Defendants' Motion to Dismiss (Doc. 13) be **GRANTED**, and that Count II of Plaintiff's Complaint be **DISMISSED**.

Signed: July 29, 2020

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).